IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSHUA CUTLER, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL CASE NO. 4:10-4684 |
| | § | |
| LOUISVILLE LADDER, INC., *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Plaintiffs Joshua Cutler and Kristina Cutler have filed a Motion to Exclude

and/or Limit Testimony of Defense Expert Michael Van Bree [Doc. # 25] ("Motion").

Defendants Louisville Ladder, Inc. and Wal-Mart Stores, Inc. have filed a joint

response [Doc. # 29] ("Response"). Plaintiffs have replied, and both sides filed

additional briefing.[1]  Having carefully reviewed the Motion and briefing, as well as

applicable authorities and all matters of record, the Court concludes that the Motion

should be **granted in part** and **denied in part**.

## I.    BACKGROUND

On or about October 11, 2009, Plaintiff Joshua Cutler was injured while using

a ladder manufactured by Defendant Louisville Ladder, and purchased by Plaintiffs

---

[1]     Reply [Doc. # 31]; Defendants' Supplemental Brief [Doc. # 33-1]; Plaintiffs' Reply
to Defendants' Supplemental Brief [Doc. # 36]; Defendants' Surreply to Plaintiff's
Reply to Defendants' Supplemental Brief [Doc. # 37].

from Defendant Wal-Mart.  Plaintiff Kristina Cutler, Joshua's wife, witnessed part of

the incident.  The cause of the accident is hotly contested.   Plaintiffs allege that the

ladder suddenly collapsed, causing Cutler to fall.  Defendants maintain that Cutler lost

his balance and tipped the ladder over and that the ladder was damaged when it fell

and hit nearby furniture.

At the initial pretrial conference held April 11, 2011, the parties jointly

submitted an agreed Docket Control Order ("DCO"), which the Court adopted.[2]  The

parties suggested simultaneous exchange of expert designations and reports, with a

deadline of November 2, 2011, and the Court adopted the request.  On November 2,

Plaintiffs designated Dr. Jack Vinson and Dr. James Glancey as their experts and

served their report on all counsel of record.[3]   Also on November 2, Defendants

designated Michael P. Van Bree of Engineering Systems Inc. ("ESI") as their expert

and provided Van Bree's report ("Initial Report").[4]  Van Bree opined in pertinent part

that there had been "considerable number of testing documents produced" for the

model of ladder in issue, and that the "subject model was evaluated and tested for

---

[2]     *See* DCO [Doc. # 11].  The DCO's deadlines for the Joint Pretrial Order and Docket
       Call subsequently were extended.  *See* Docs. # 19, # 40.

[3]     *See* Plaintiffs' Designations of Testifying Experts [Doc. # 14].

[4]     This report is attached to Plaintiff's Motion. *See* Report of Michael Van Bree, dated
       Nov. 2, 2011 (Exhibit 1 to Motion) ("Initial Report").

compliance with [applicable] standard[s]."[5]  However, Van Bree did not report that

he personally tested the ladder used by Joshua Cutler, or any exemplars of the same

model.  Van Bree opined that the documents produced by Louisville Ladder

"demonstrate[d] that the subject model was tested to the full series of ANSI tests many

times and passed."[6] He also summarized his firm's research and testing "over the

years to evaluate ladder strength and stability considerations."[7]  Van Bree mentioned

that exemplar ladders had been requested and that he anticipated further responding

to the Plaintiffs' claims.[8]  Van Bree also referred to independent testing records of the

Consumer Testing Laboratories, among other tests, and commented on *Consumer

Reports* articles regarding allegedly similar failures.[9]

Van Bree's Initial Report concluded with the opinions that his firm had found

no defect in design in the model ladder in issue; that the model fully meets or exceeds

the applicable safety standards; that Plaintiff lost his balance and tipped the ladder;

---

[5]    Initial Report, at 6.  The standards referred to included those of the American National
       Standards Institute ("ANSI"), which Van Bree describes as a "non-profit organization
       that promulgates safety standards for thousands of products, including ladders."  *Id.*
       at 3.

[6]    *Id.* at 6.

[7]    *Id.* at 7.

[8]    *Id.*

[9]    *Id.*

that the ladder is stable and exceeds the ANSI stability requirements when used according to the stated warning; and that the damage to the ladder was a result of Plaintiff's fall rather than the cause of the accident.[10]  The report does not provide particularized reasoning for Van Bree's conclusions.

On March 2, 2012, the last day of the discovery period, Van Bree on behalf of Defendants produced to Plaintiffs a "Supplemental Report."[11]  In this Supplemental Report,  Van Bree stated that he had been asked by Defendants' counsel "to consider additional material that has become available since issuing a report on November 2, 2011."[12]  Van Bree reported that he engaged in numerous tests on exemplar ladders, including multiple climbing tests.[13]  He described the tests and the results in some detail.  Finally, Van Bree made findings based on his new testing and concluded that "there is no structural deficiency in the ladder and the condition of the ladder is a result of the ladder tip over and user impact."[14]  He further stated that "[a] structural failure did not cause the damage to the subject ladder" and that the damage to the

---

[10]     *Id.* at 8.

[11]     Supplemental Report of Michael Van Bree, dated March 2, 2012 (Exhibit 2 to Motion) ("Supplemental Report").

[12]     *Id*. at 2.

[13]     *Id*. at 4-6.

[14]     *Id*. at 8.

ladder was "consistent with a tip over incident wherein the user impacts the ladder during the fall."[15]

Van Bree's Supplemental Report also critiqued the opinions in the report of Plaintiffs' experts, Drs. Jack Vinson and James Glancey, dated November 1, 2011, and gave opinions on "recently received" mathematical calculations by Vinson ("Vinson Calculations"), which had been produced during Vinson's deposition on February 25, 2012.[16]   In the section headed "Conclusions/Opinions," Van Bree repeated his conclusions from his Initial Report, but added a final opinion in rebuttal of Plaintiffs' experts' conclusions:

> The bottom step of the [ladder] is capable of supporting reasonably foreseeable loading conditions, as stated in the warnings and instructions provided with labeling affixed to the ladder.  The step flanges do not need to be made thicker as stated by Drs. Vinson and Glancey.[17]

Plaintiffs did not depose Van Bree during the discovery period because of an agreement among counsel that the deposition could occur thereafter.  Plaintiffs had not taken Van Bree's deposition as of the filing of their Motion or supporting briefs.

---

[15]    *Id.*

[16]    *Id*. at 7-8.

[17]    *Id.* at 9.

## II.   ANALYSIS

Plaintiffs' Motion seeks to exclude the information and opinions contained in both of Van Bree's reports.  The reports themselves are, of course, inadmissible as hearsay.[18]

### A.   Initial Report

Plaintiffs move to exclude the opinions in Van Bree's Initial Report under *Daubert v. Merrell Dow Pharmaceuticals, Inc*.[19]  Plaintiffs argue that Van Bree's background does not qualify him to render opinions on "the biomechanics of what happens when a person falls off a ladder."[20]  Plaintiffs also argue that Van Bree offers only *ipse dixit* opinions, having failed to explain how his opinions are grounded in the methods and procedures of science.

Witnesses who are qualified by "knowledge, skill, experience, training or education" may present opinion testimony to the jury.[21]  A party seeking to introduce expert testimony must show (1) the testimony is based upon sufficient facts or data,

---

[18]   *See* FED. R. EVID. 801(c) ("'Hearsay' means a statement that:  (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.").

[19]   *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579 (1993).

[20]   Motion, at 5.

[21]   FED. R. EVID. 702.  *See, e.g., Johnson v. Arkema, Inc*., ___ F.3d ___, 2012 WL 2330226, at *3-*4 (5th Cir. June 20, 2012); *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

(2) the testimony is the product of reliable principles and methods, and (3) the witness

has applied the principles and methods reliably to the facts of the case.[22] The trial

courts act as "gate-keepers," making a "preliminary assessment of whether the

reasoning or methodology underlying the testimony is scientifically valid and of

whether that reasoning or methodology properly can be applied to the facts in issue."[23]

Differences in expertise go to the weight to be assigned to the expert's

testimony by the trier of fact, rather than to the testimony's admissibility.[24]

Consequently, "[v]igorous cross-examination, presentation of contrary evidence, and

careful instruction on the burden of proof are the traditional and appropriate means of

attacking shaky but admissible evidence."[25]

Plaintiffs argue that the bases for Van Bree's conclusions are inadequate under

*Daubert*. The Court, on balance, is unpersuaded. While Plaintiff argues with some

force that the Initial Report offers insubstantial support for some of Van Bree's

conclusions, these points largely address the weight a factfinder might accord to Van

---

[22]   *Huss*, 571 F.3d at 452 (citing *Smith v. Goodyear Tire & Rubber Co.,* 495 F.3d 224, 227 (5th Cir. 2007); FED. R. EVID. 702).

[23]   *Id.* (internal citations and quotation marks omitted).

[24]   *Id.* (citing, *inter alia*, *Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 782 (3d Cir. 1996) ("most arguments about an expert's qualifications relate more to the weight to be given the expert's testimony than to its admissibility")).

[25]   *Daubert,* 509 U.S. at 596.

Bree's credentials and reasoning.  Van Bree's background, the principles utilized, and

his methods are minimally adequate under *Daubert.*  As Defendants argue, Van Bree

relied on his investigation of the accident scene and on-site inspection of the ladder

in question, as well as his extensive experience and his past testing on ladders of the

same model as the subject ladder.[26]  As noted, Plaintiffs' criticisms go to the weight

of Van Bree's reasoning and conclusions, and these arguments may be advanced at

trial.[27]

Plaintiff's motion to exclude the information, reasoning and opinions in Van

Bree's Initial Report is denied.

## B.    Supplemental Report

Plaintiffs, invoking Rule 37(c), move the Court to exclude as untimely the

information in Van Bree's Supplemental Report.  Plaintiffs urge that Van Bree be

precluded from testifying about any new opinions or matters in the Supplemental

Report.

Rule 37(c)(1) provides for exclusion of evidence as a sanction for untimely

disclosure:

> **Failure to Disclose or Supplement**.  If a party fails to provide
> information or identify a witness as required by Rule 26(a) or (e), ***the***

---

[26]    *See* Response, at 11-15.

[27]    *See Huss*, 571 F.3d at 452.

*party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.*  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

> (A)   may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B)   may inform the jury of the party's failure; and
>
> (C)   may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).[28]

Rule 26(a), referenced in Rule 37(c), requires disclosures of expert testimony at the time and in the sequence ordered by the Court.[29]

In this case, the DCO required simultaneous disclosure of experts and expert reports on November 2, 2011.  This expert disclosure procedure was adopted by the

---

[28]   FED. R. CIV. P. 37(c)(1) (emphasis added).  The sanctions listed in Rule 37(b)(2)(A), incorporated by Rule 37(c)(1)(C), are as follows:

> (i)    directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii)   prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii)  striking pleadings in whole or in part;
> (iv)   staying further proceedings until the order is obeyed;
> (v)    dismissing the action or proceeding in whole or in part; [or,]
> (vi)   rendering a default judgment against the disobedient party.

FED. R. CIV. P. 37(b)(2)(A).

[29]   FED. R. CIV. P. 26(a)(2)(D) ("A party must make [disclosures of expert testimony] at the times and in the sequence that the court orders.").

Court because the parties jointly suggested simultaneous disclosure.  On March 2, 2012, a full four months after the November 2 deadline and on the last day of discovery, without having requested an extension of the expert deadline, Defendants produced to Plaintiffs Van Bree's Supplemental Report.

Defendants first defend their late production by pointing to portions of the Initial Report that indicated Van Bree's intention to supplement his report at a later date.[30] Although subsequent productions are permitted in certain circumstances under the Federal Rules of Court Procedure,[31] Defendants' unilateral extension of the experts' opinion disclosure deadline is not authorized.  Defendants have no legal basis to unilaterally reserve to themselves the right to supplement outside the Court's deadlines and in contravention of the DCO.[32]

---

[30]  *See* Initial Report, at 8 ("ESI fully anticipates responding to any defect theories presented by plaintiff[s] or their representatives and reserves the right to supplement its findings in this matter, based upon further work performed by ESI, including but not limited to review of further discovery, depositions, product testing or analysis.").

[31]  As discussed *infra*, specific provisions of Rule 26 pertain to rebuttal evidence and supplementation of expert reports.  *See* FED. R. CIV. P. 26(a)(2)(D)(ii), 26(e).

[32]  Defendants further argue that the Supplemental Report was not late because the parties had agreed to extend the discovery deadline so as to complete expert depositions. *See* Letter Agreement, dated Feb. 29, 2012 (Exhibit 8 to Response) (counsel agree to extend discovery deadline to March 31, 2012, "to permit time to complete expert depositions").  This argument lacks merit.  The parties' agreement pertains to expert depositions.

Defendants' four month delay is a flagrant violation of the Court's schedule, and the Supplemental Report is untimely.[33]  Under Rule 37(c), Defendants are not permitted to use the information in the Supplemental Report unless the failure to timely disclose the report's contents was either "substantially justified" or "harmless."[34]  The Court therefore turns to these inquiries.

### 1.    Substantial Justification

The Court finds that Defendants' late disclosure of the Supplemental Report was not substantially justified as to the majority of the report, including without limitation Van Bree's post-November 2 testing results.  As to whether the information specifically responsive to the Vinson Calculations is timely rebuttal evidence, the record is incomplete and the Court reserves ruling until at or near the time of trial.

**New Testing.—**  In the Supplemental Report, Van Bree explains various test results using exemplar ladders, including climbing trials (deliberate climb, aggressive climb, jumping on ladder, etc.), static load tests, and modified ANSI Cantilever-in

---

[33]    FED. R. CIV. P. 26(a)(2)(D).

[34]    FED. R. CIV. P. 37(c).  When reviewing a district court's exercise of discretion to exclude an improperly designated expert, the Fifth Circuit considers four factors: (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice.  *Brumfield v. Hollins*, 551 F.3d 322, 330 (5th Cir. 2008); *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004).  *See City of El Paso, Tex. V. El Paso Entertainment, Inc.*, 464 F. App'x 366, 380 (5th Cir. 2012).

tests, among others.[35]  He also reports on his Finite Element Analysis.[36]  Defendants

have made no persuasive argument that this testing could not have been conducted

before the November 2 deadline.  Rather, Defendants state that Van Bree did not

perform testing earlier because of "a limited number of exemplars."[37]  This case has

been pending since 2010.  Neither Van Bree nor Defendants explain why the supply

of exemplars was limited.  Given that the subject ladder was purchased at Wal-Mart

and thus, presumably, was mass-marketed, Defendants' bare, conclusory assertion of

a shortage is unpersuasive.

Defendants further state that Van Bree waited to conduct his testing because he

wanted to "ensure that [he] performed the proper tests to account for Plaintiffs'

experts' testimony and any materials from their files."[38]  This argument provides no

justification for the delay.  As stated previously, the parties agreed to simultaneous

disclosures of expert reports, and Defendants are not permitted to unilaterally

disregard the deadline so as to gain the advantage of responding to Plaintiffs'

arguments.  Moreover, as Plaintiffs point out, Van Bree was aware *before the*

---

[35]    Supplemental Report, at 4-6.

[36]    *Id*. at 6.

[37]    Declaration of Michael Van Bree (Exhibit 10 to Response), at 2.

[38]    *Id*.

*November 2 deadline* of Plaintiffs' theory regarding the ladder's collapse.[39]

Defendants' explanation for Van Bree's delayed testing therefore is inadequate.

Defendants also argue that the Supplemental Report was justified because they

had an "ongoing duty" to supplement their expert's report under Rule 26(e)(2).[40]

However, while Rule 26(e) permits supplementation of prior disclosures, the

supplements "are not intended to provide an extension of the deadline by which a

party must deliver the lion's share of its expert information."[41]  Rule 26(a) requires the

expert's initial report to include  "a *complete* statement of all opinions the witness will

---

[39]     *See* Initial Report, at 6 (discussing conclusion of Dr. Lee Lowery that the subject
        ladder collapsed during use).  Van Bree is a former employee of Louisville Ladder
        and has testified for Louisville Ladder 15 times from 2007-2011.  Motion, at 3;
        Exhibit 3 to Motion.   Furthermore, Louisville Ladder had previously conducted on
        its ladders at least some of the tests discussed in the Supplemental Report.  *See* Initial
        Report, at 7 (referencing ESI's past testing and climbing trials on the subject ladder).

[40]     FED. R. CIV. P. 26(e)(2) ("For an expert whose report must be disclosed under Rule
        26(a)(2)(B), the party's duty to supplement extends both to information included in
        the report and to information given during the expert's deposition.  Any additions or
        changes to this information must be disclosed by the time the party's pretrial
        disclosures under Rule 26(a)(3) are due").

[41]     *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co, Inc*., 73 F.3d 546, 571 (5th
        Cir. 1996).

express and the basis and reasons for them."[42]   Rule 26(e) does not permit

circumvention of Rule 26(a)'s disclosure requirement.[43]

Because Defendants have made no persuasive showing that the testing in the

Supplemental Report could not have been conducted in compliance with the DCO's

November 2 deadline, the untimely disclosure is not substantially justified.

**Rebuttal Evidence.—** Defendants further argue that the timing of the

Supplemental Report was justified because its contents were merely rebuttal to the

reports and testimony of Plaintiffs' experts.  Rebuttal evidence is permitted under Rule

26(a)(2)(D)(ii) *if* offered within thirty days of the other party's disclosure.[44]

To the extent Defendants argue that the Supplemental Report was merely

rebuttal to the report submitted by Plaintiffs' experts, Vinson and Glancey, the

---

[42]   FED. R. CIV. P. 26(a)(2)(B)(i) (emphasis added); *see Sierra Club*, 73 F.3d at 571.

[43]   *See*, *e.g.*, *Friebel v. Paradise Shores of Bay County, LLC*, 2011 WL 2420230, at *2 (N.D. Fla. June 13, 2011) ("to construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would [wreak] havoc in docket control and amount to unlimited expert opinion preparation"); *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008) ("Courts distinguish 'true supplementation' (*e.g.*, correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by 'supplementing' an expert report with 'new and improved' expert report.").

[44]   *See* FED. R. CIV. P. 26(a)(2)(D) ("Absent a stipulation or a court order, the disclosures [of expert testimony] must be made:  (i) at least 90 days before the date set for trial or for the case to be ready for trial; or (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.").

argument is unavailing.  Vinson and Glancey's report was served on defense counsel on November 2, 2011.  The Van Bree Supplemental Report presented to Plaintiffs on March 2, 2012, is untimely as mere rebuttal under Rule 26(a)(2)(D).[45]

Notwithstanding, Vinson and Glancey were deposed on February 24 and 25, 2012, less than one month before the Supplemental Report.  Therefore, if opinions in the Supplemental Report are actually specific rebuttal to new information disclosed in Vinson and Glancey's depositions, the new opinions are timely under Rule 26(a).

The record indicates that the only evidence newly produced at Vinson and Glancey's depositions is the Vinson Calculations, *i.e.,* the experts' handwritten calculations that were produced at Vinson's deposition.[46]  Van Bree's  Supplemental Report responds to the Vinson Calculations, stating that they are "limited to investigating some structural aspects of the lowest step, gusset and side rail," and that the final page of the Calculations contains a conclusion "that the bottom step flanges should have the thickness increased to 0.137 inches, which would cost less than . . . $1.00."[47]  Van Bree then opines as follows:

---

[45]     For the same reason, the Supplemental Report is untimely as a rebuttal to Plaintiffs Joshua and Kristina Cutler's depositions that took place on December 14, 2011.

[46]     Supplemental Report, at 2 (listing "Vinson Calculations (5 pages)").   The Supplemental Report's list of materials reviewed by Van Bree does not include the transcripts of Vinson and Glancey's depositions.

[47]     *Id*. at 8.

> Drs. Vinson and Glancey's hand calculations . . . are incomplete, present values with no supporting documentation, and contain mathematical errors. . . . Discussion and corresponding analysis demonstrating the fatal flaws in Drs. Vinson and Glancey's methodology will not be repeated here, since it is presented in the referenced publication [presented at the ASME 2011 International Mechanical Engineering Congress and Exposition]. In short, ESI disagrees that the analysis presented by Drs. Vinson and Glancey accurately represents the loading of the ladder by Mr. Cutler during his use at the time of the accident. Consequently, the analysis is, at best, a design analysis rather than a failure analysis.[48]

Van Bree also adds a new opinion that the ladder's bottom step "is capable of supporting reasonably foreseeable loading conditions" and that "[t]he step flanges do not need to be made thicker as stated by Drs. Vinson and Glancey."[49]

Plaintiffs assert that the Vinson Calculations were included in Vinson and Glancey's report from November 2011, and thus that the information pertaining to those calculations in the Supplemental Report is untimely as rebuttal. However, because Vinson and Glancey's report is not in the record, the Court is unable to determine whether the calculations produced at the February deposition had previously been disclosed.[50] This limited issue therefore is reserved for a hearing

---

[48]    *Id.*

[49]    *Id.* at 9.

[50]    The Court notes, however, that Plaintiff's expert designation, filed on November 2, 2011, disclosed Vinson's opinion that design changes to the ladder's lowest step would make the ladder structurally sound under foreseeable loads. *See* Plaintiffs' Designations of Testifying Experts [Doc. # 14], at 2.

outside the presence of the jury at or shortly before trial.[51]  At the hearing, the Court

will consider whether Defendants may adduce Van Bree's reasoning and opinions that

specifically address the Vinson Calculations, *i.e.,* Van Bree's comments in first two

complete paragraphs on page 8 of the Supplemental Report, and in the final bullet

point on page 9.  The Court also will consider whether Van Bree's reasoning and

opinions in the identified portion of the Supplemental Report could have been

formulated before Vinson's deposition, when the Vinson Calculations allegedly were

produced.

The Court concludes that Defendants' late disclosure of the information in the

Supplemental Report is not substantially justified, except possibly for Van Bree's

reasoning and opinions addressing the Vinson Calculations.

### 2.    Harm

Turning to the second inquiry under Rule 37(c)(1), the Court concludes that

Defendants' untimely production of the Supplemental Report was not "harmless."

Defendants disclosed substantial new testing by Van Bree, his new reasoning, and

new conclusions on the last day of the discovery period, thereby depriving Plaintiffs

of the opportunity to address these matters in the ordinary course.  The post-

November 2 testing by Van Bree, and the opinions and conclusions drawn from that

---

[51]      *See* FED. R. EVID. 104.

testing, are not timely rebuttal of Plaintiffs' experts' opinions and Plaintiffs would be prejudiced by admission of this new information. Plaintiffs complied with the parties' agreed disclosure obligations and were entitled to receive from Defendants similar disclosures. Instead, Defendants served a brief Initial Report with conclusions that were barely supported. Now, having missed the rebuttal opinions deadline in the Federal Rules, having failed to timely seek a continuance or extension of the expert deadline in the DCO, and having offered no meaningful explanation for the delay, Defendants seek to supplement Van Bree's initial opinions and reasoning with entirely new testing, reasoning and conclusions. The Court will not condone this conduct.

Defendants argue that a continuance will cure each of Plaintiffs' complaints. The Court is unpersuaded and exercises its discretion to deny a continuance under the circumstances presented. As stated above, Defendants provide no meaningful explanation for Van Bree's delayed testing. Moreover, because Defendants frequently use Van Bree as an expert, he should have known that he needed or wanted to conduct testing on the subject ladder before March 2. A continuance on these facts would reward Defendants' dilatory behavior, or possibly gamesmanship, and is not warranted. "Otherwise, the failure to satisfy the rules would never result in exclusion, but only a continuance."[52]

---

[52]    *Hamburger*, 361 F.3d at 884.

Defendants further argue that Van Bree is their only expert and thus his testimony is extremely important.  This contention also is unpersuasive.  The Court allows Van Bree to testify on the conclusions and his reasoning, to the extent he explained them in his Initial Report (or in his deposition, if any).  Thus, Defendants are not without any expert testimony for trial.  The Court's ruling here is designed to avoid excusing what appears to have been, at best, a lack of diligence.  Defendants' protestations regarding the importance of Van Bree's testimony only underscore how critical it was for them to have timely disclosed the information contained in the Supplemental Report.[53]

### 3.    Conclusion

The Court concludes, pursuant to Rule 37(c)(1), that Defendants have failed to show that the untimely disclosure of the information in the Supplemental Report is either "substantially justified" or "harmless," with the possible exception of information responsive to the Vinson Calculations.  To the extent Defendants argue that certain information in the Supplemental Report is timely rebuttal to the Vinson Calculations, they may pursue those arguments at a brief hearing outside the jury's

---

[53]    *See* *id.* at 883 ("Although the importance of [the expert's] proposed testimony weighs against exclusion of that testimony, the importance of proposed testimony cannot singularly override the enforcement of local rules and scheduling orders. Additionally, the importance of the testimony underscores how critical it was for [the plaintiff] to have timely designated [his expert].") (internal quotation marks and citations omitted).

presence at the time of trial.  As to all other information in the Supplemental Report, including Van Bree's testing on exemplar ladders, Defendants may not introduce the evidence or Van Bree's opinions at trial.

## IV.    CONCLUSION

For the reasons explained above, it is hereby

**ORDERED** that Plaintiffs' Motion to Exclude and/or Limit Testimony of Defense Expert Michael Van Bree [Doc. # 25]  is **GRANTED in part** and **DENIED in part**.  Plaintiffs' request to exclude the information in Van Bree's Initial Report is **DENIED**.  Plaintiff's request to exclude the information in Van Bree's Supplemental Report is **GRANTED** except insofar as Defendants show at trial that the information in the Supplemental Report specifically rebuts the Vinson Calculations, and that the information in the Vinson Calculations was not available to Van Bree or Defendants' counsel prior to Vinson's deposition.  The Court will hold a brief hearing at trial, outside the jury's presence, regarding this narrow issue.

**SIGNED** at Houston, Texas, this **20**[th] day of **July, 2012**.

Nancy F. Atlas
United States District Judge